306 Ga. 15
FINAL COPY

S18G0947.  NORDAHL v. THE STATE.

ELLINGTON, Justice.

We granted certiorari in this case to consider whether the Court of Appeals erred in applying a "conduct" approach when analyzing whether a prior out-of-state or federal conviction is for a crime that would be a felony if committed in Georgia and would, therefore, support enhanced punishment under OCGA § 17-10-7 (a) and (c), Georgia's general recidivist sentencing statute. As explained below, the Court of Appeals' "conduct" approach violates the Sixth Amendment to the Constitution of the United States and must, therefore, be disapproved. Nevertheless, after applying the "elements-only" or "modified categorical" approach to analyzing the prior federal conviction used to support the recidivist sentence at issue in this appeal, we affirm the Court of Appeals' judgment under the right-for-any-reason doctrine. See *Bunn v. State*, 291 Ga. 183, 193 (2) (d) (728 SE2d 569) (2012) (affirming the judgment of the

Court of Appeals on certiorari under the right-for-any-reason doctrine).

The record in this case shows that, in 2013, the State indicted Blane Nordahl on three counts of burglary, four counts of first degree burglary, and a single count of criminal attempt to commit burglary. The State notified Nordahl that it intended to seek recidivist punishment pursuant to OCGA § 17-10-7 (a) and (c), based on his prior out-of-state and federal felony convictions. Nordahl entered a non-negotiated guilty plea to the Georgia charges on February 10, 2017, but he challenged the State's request for recidivist punishment, arguing, inter alia, that his federal conviction for conspiracy to transport stolen goods in interstate commerce was not a crime that would be a felony if committed in Georgia. The trial court rejected Nordahl's argument and sentenced him as a recidivist.[1]

---

[1] The trial court imposed a sentence of twenty years, with ten years to serve and the balance suspended, on the three burglary counts; twenty-five years, with ten to serve and the balance suspended, on the four first degree burglary counts; and ten years to serve on the criminal attempt to commit

In affirming the trial court's recidivist sentence, the Court of Appeals analyzed whether the conduct underlying Nordahl's prior federal conviction (as opposed to the elements of the offense as charged) would constitute a felony if committed in Georgia. The Court of Appeals rejected Nordahl's argument that this approach violates the Sixth Amendment as construed by the United States Supreme Court in *Almendarez-Torres v. United States*, 523 U. S. 224 (118 SCt 1219, 140 LE2d 350) (1998), *Apprendi v. New Jersey*, 530 U. S. 466 (120 SCt 2348, 147 LE2d 435) (2000), and subsequent decisions holding that any fact that increases the penalty for a crime beyond the prescribed statutory maximum — other than the fact of the prior conviction itself — must be submitted to a jury and proved beyond a reasonable doubt. Specifically, the Court of Appeals held that nothing in the federal precedent relied upon by Nordahl — cases construing the Armed Career Criminal Act of 1984[2] ("ACCA"),

_____

burglary count. The trial court further ordered that all the sentences are to run concurrently.

[2] The ACCA prescribes a mandatory minimum sentence of 15 years for a person who violates 18 USC § 922 (g) and "has three previous convictions . . .

a federal recidivist statute — could be construed as mandating "that state courts similarly employ an 'elements only' test when interpreting and applying state-specific sentence-enhancing statutes." *Nordahl v. State*, 344 Ga. App. 686, 694 (2) (811 SE2d 465) (2018). Citing its own case law as precedent, the Court of Appeals held that, in construing OCGA § 17-10-7 (a) and (c), "the State bears the burden of showing that the foreign convictions were for *conduct* which would be considered felonious under the laws of this state." (Citations and punctuation omitted; emphasis in original.) Id.[3] The court concluded that the State met its burden of showing that the

---

for a violent felony or a serious drug offense." § 924 (e) (1). The ACCA defines a "violent felony" to mean any felony, whether state or federal, that "has as an element the use, attempted use, or threatened use of physical force against the person of another," or that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." § 924 (e) (2) (B). (We note that the ACCA's "residual clause," § 924 (e) (2) (B), which provides that a felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another" should be treated as a "violent felony," was held to be unconstitutionally vague because it "both denies fair notice to defendants and invites arbitrary enforcement by judges." *Johnson v. United States*, 576 U. S. ___ (II) (135 SCt 2551, 2556-2557 (II), 192 LE2d 569) (2015).

[3] See footnote 8, infra, for a list of Court of Appeals cases relying on the "conduct" approach.

conduct described in Nordahl's federal conviction, if committed in Georgia, is "most closely related to . . . [felony] theft by receiving" under Georgia law, "which is committed when a person 'receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner.'" (Citation omitted.) Id.[4] "[A]ccordingly," the Court of Appeals concluded, "the trial court did not err in sentencing Nordahl as a recidivist under OCGA § 17-10-7 (a) and (c)." Id. at 695 (2).[5]

1. *Construing OCGA § 17-10-7 (a) and (c).* Under subsections (a) and (c) of Georgia's general recidivist statute, a trial court is

---

[4] In applying the "conduct" approach, the court determined that, when Nordahl "pleaded guilty to the federal charge, [he admitted] that he stole more than $5,000 worth of silver from various homes, which he burglarized, and that he transported that stolen property across state lines." Id. at 694 (2). "And in 2000, when Nordahl committed the federal offense, . . . the value of the property that was the subject of the theft exceeded $500[; therefore,] the defendant was subject to imprisonment for up to ten years," pursuant to OCGA § 16-8-7 (theft by receiving) and former OCGA § 16-8-12 (a) (1) (2000) (penalties for theft in violation of OCGA §§ 16-8-2 through 16-8-9). Id.

[5] Nordahl was not sentenced pursuant to OCGA § 17-10-7 (b), which pertains to enhanced sentencing based on prior "serious violent felony" convictions.

required to impose an enhanced sentence if the State satisfies certain prerequisites,[6] including proof of one or more qualifying prior convictions, which we refer to in this opinion as "predicate convictions." OCGA § 17-10-7 (a) provides:

> Except as otherwise provided in subsection (b) or (b.1) of this Code section, any person who, after having been convicted of a felony offense in this state or having been convicted under the laws of any other state or of the United States of a crime which if committed within this state would be a felony and sentenced to confinement in a penal institution, commits a felony punishable by confinement in a penal institution shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.

OCGA § 17-10-7 (c) provides:

> Except as otherwise provided in subsection (b) or (b.1) of this Code section and subsection (b) of Code Section 42-9-45, any person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state shall, upon conviction for such fourth

---

[6] See generally *von Thomas v. State*, 293 Ga. 569, 572-573 (2) (748 SE2d 446) (2013) (discussing the prerequisites for a valid recidivist sentence).

offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

In determining how a trial court should analyze whether a prior federal or out-of-state conviction qualifies as a predicate conviction under these subsections, we first look to the language of the statute itself. Our analysis of the proper construction to give these provisions is guided by the following principles:

> A statute draws its meaning from its text. When we read the statutory text, we must presume that the General Assembly meant what it said and said what it meant, and so, we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. The common and customary usages of the words are important, but so is their context. For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question.

(Citations and punctuation omitted.) *City of Marietta v. Summerour*, 302 Ga. 645, 649 (2) (807 SE2d 324) (2017). "As in all appeals involving the construction of statutes, our review is conducted under a de novo standard." (Citation and punctuation omitted.) *Williams*

*v. State*, 299 Ga. 632, 633 (791 SE2d 55) (2016).

Georgia's general recidivist statute does not expressly specify the analysis a sentencing court should employ when determining whether an out-of-state or federal criminal conviction constitutes a qualifying predicate conviction for enhanced punishment. See OCGA § 17-10-7. It does, however, use words that indicate an elements-only approach. Predicate convictions are described in terms of "felonies" and prior "conviction[s]" for "crimes." "Conduct," or any word of similar import, is not used to describe predicate convictions. See id. Because the elements of a crime are those parts of a crime that the prosecution must prove to sustain a conviction, an "elements-only" approach to evaluating predicate convictions is required by the general recidivist statute.[7]

In construing OCGA § 17-10-7 (a) and (c) to allow a sentencing

---

[7] Black's Law Dictionary defines "elements of a crime" as "[t]he constituent parts of a crime — [usually] consisting of the actus reus, mens rea, and causation — that the prosecution must prove to sustain a conviction." Black's Law Dictionary 634 (10th ed. 2014). See also OCGA § 16-1-3 (4) ("conviction" defined as the "final judgment of conviction entered upon a verdict or finding of guilty of a crime or upon a plea of guilty"); OCGA § 16-2-1 ("crime" defined as "a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence").

court to consider whether a defendant's federal or out-of-state conviction involves conduct that qualifies as a predicate conviction for enhanced punishment, the Court of Appeals relied on a line of its own cases that used the word "conduct" loosely and applied the word to both the elements of the prior crime and to the non-elemental facts or circumstances associated with the prior crime. See *Nordahl*, 344 Ga. App. at 694 (2) n.40. Though cited as precedent, these cases provide no analytical support for the adoption of a "conduct" approach.[8] Although this Court has not previously addressed whether such a "conduct" approach violates the Sixth Amendment, we have articulated in other contexts the fundamental principle that

---

[8] In *Nordahl*, the Court of Appeals relied on three cases: *Davis v. State*, 319 Ga. App. 501, 504 (2) (736 SE2d 160) (2012), *Woodson v. State*, 242 Ga. App. 67, 70 (4) (530 SE2d 2) (2000), and *Wallace v. State*, 175 Ga. App. 685, 687 (6) (333 SE2d 874) (1985). *Wallace* appears to be the first in this line of "conduct" approach cases. Although the *Wallace* court used the word "conduct" in its analysis, it appears to have actually applied an "elements-only" approach in parsing the defendant's prior conviction for violating 18 USC § 842 (h). Id. Nevertheless, *Wallace* and its progeny have been relied on as support for the "conduct" approach in a number of cases, including *Loveless v. State*, 344 Ga. App. 716, 728 (3) (812 SE2d 42) (2018); *Anderson v. State*, 337 Ga. App. 739, 744 (2) (788 SE2d 831) (2016); *Davis*, 319 Ga. at 504 (2); *Nelson v. State*, 277 Ga. App. 92, 99-100 (5) (625 SE2d 465) (2005); *Lewis v. State,* 263 Ga. App. 98, 99-100 (2) (587 SE2d 245) (2003); and *Woodson*, 242 Ga. App. at 70 (4).

guides us in this case: Under the Sixth Amendment, as applied to the states through the Due Process Clause of the Fourteenth Amendment, any fact — other than the fact of a prior conviction — that serves to enhance a sentence is considered an element of the crime that must be found beyond a reasonable doubt by the jury or admitted by the defendant when pleading guilty.[9] We note that, even assuming that the Court of Appeals' construction of the statute was plausible (and it is not, given the statutory text's requisite "elements-only" approach), the canon of constitutional avoidance would weigh against our adopting that interpretation because, as we explain in Division 2 below, it runs afoul of the Sixth Amendment. See *Clark v. Martinez*, 543 U. S. 371, 381 (II) (125 SCt 716, 160 LE2d 734) (2005) (explaining that the canon of constitutional avoidance "is a tool for choosing between competing plausible interpretations

---

[9] See, e.g., *Babbage v. State*, 296 Ga. 364, 368 (2) (b) (768 SE2d 461) (2015) (The "Sixth and Fourteenth Amendments require jury determination as to facts that increase the penalty for a crime beyond the prescribed statutory maximum or increase the prescribed range of penalties to which a criminal defendant is exposed." (citation and punctuation omitted)); *Brown v. State*, 284 Ga. 727, 729 (3) (670 SE2d 400) (2008) (same).

of a statutory text, resting on the reasonable presumption that [the legislature] did not intend the alternative which raises serious constitutional doubts"). See also *Haley v. State*, 289 Ga. 515, 521-522 (2) (b) (712 SE2d 838) (2011) ("[A] statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction," as "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." (citations and punctuation omitted)).

Further, the Court of Appeals held (and the State also argues) that the states are free to employ the "conduct" approach because the United States Supreme Court's analysis in the case law relied upon by Nordahl is limited to construing the ACCA, a federal statute not at issue here. Therefore, Georgia courts are not compelled to apply that analysis to Georgia's recidivist statutes. This distinction, however, is not relevant here. The Supreme Court's analysis in those ACCA cases was fundamentally informed by *Sixth Amendment*

principles, the very same principles at issue in this case.[10] We must follow the precedents of the United States Supreme Court in analyzing whether the general recidivist statute violates a defendant's Sixth Amendment rights "as it is a fundamental principle that this Court is bound by the Constitution of the United States as its provisions are construed and applied by the Supreme Court of the United States." (Citation and punctuation omitted.) *Ringold v. State*, 304 Ga. 875, 878 (823 SE2d 342) (2019). For these reasons and the reasons that follow, we disapprove of the Court of Appeals' use of the "conduct" approach in evaluating out-of-state and federal convictions for use as predicate convictions under OCGA § 17-10-7 (a) and (c).

2. *Sixth Amendment limitations on recidivist sentencing schemes*. The Sixth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, "entitle[s] a criminal defendant to 'a jury determination that [he] is guilty of

---

[10] Nordahl has not invoked the protections afforded to him under the Georgia Constitution, which states that "[t]he right to trial by jury shall remain inviolate." Ga. Const. of 1983, Art. I, Sec. I, Par. XI (a).

every element of the crime with which he is charged, beyond a reasonable doubt.'" *Apprendi*, 530 U. S. at 477 (III). In *Apprendi*, the Supreme Court held that the Sixth Amendment right to a jury trial extends to those disputed facts that may not be formally designated as "elements" of the offense, but nevertheless expose the defendant to additional punishment. Id. at 476-490 (III)-(IV). See also *Alleyne v. United States*, 570 U. S. 99, 115-116 (III) (B) (133 SCt 2151, 186 LE2d 314) (2013) (any fact that increases the mandatory minimum sentence for a crime must be admitted by a defendant by pleading guilty or be submitted to a jury and found beyond a reasonable doubt). The Court, however, recognized a "limited exception" for the "'fact' of prior conviction." *Apprendi*, 530 U. S. at 488 (IV) n.14 (citing *Almendarez-Torres*, 523 U. S. at 230 (II) (A)). The Court explained that "there is a vast difference between accepting the validity of a prior *judgment of conviction* entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof."

(Emphasis supplied.) *Apprendi*, 530 U. S. at 496 (V). In the years following *Apprendi*, the Supreme Court issued several decisions applying these constitutional principles to an analytical framework for evaluating whether a prior criminal conviction may be used to enhance sentencing under a recidivist statute. That analytical framework can be summarized as follows.

When a sentencing court finds that a predicate conviction satisfies the requirements of a recidivist sentencing scheme, such as that of OCGA § 17-10-7 (a) and (c), that finding indisputably authorizes (and often requires) the court to impose a sentence enhancement above the maximum penalty for the crime of conviction. "Accordingly, that finding would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction." *Descamps v. United States*, 570 U. S. 254, 269 (III) (A) (133 SCt 2276, 186 LE2d 438) (2013). Given those Sixth Amendment concerns, in determining whether a prior conviction qualifies as a predicate conviction under a recidivist sentencing scheme, the sentencing court is authorized to identify

only those facts it is "sure the jury so found" in rendering its guilty verdict, or those facts as to which the defendant waived the right of jury trial in entering a guilty plea. Id. The sentencing court may not "rely on its own finding about a non-elemental fact to increase a defendant's maximum sentence." Id. at 269-270 (III) (A). Or, stated differently, a sentencing court's role is limited to identifying those *elements* that were established by virtue of the prior conviction itself, that is, those facts the jury was necessarily required to find to render a guilty verdict or those facts the court was necessarily required to find to satisfy the factual basis for a guilty plea. See id.[11]

---

[11] Other state high courts that have addressed this issue in the wake of *Descamps* have also concluded that the Sixth Amendment bars courts from engaging in fact-finding concerning the conduct underlying a defendant's prior convictions. See, e.g., *People v. Gallardo*, 407 P3d 55, 59-65 (III), (IV) (Cal. 2017) (The trial court violated defendant's Sixth Amendment right to a jury trial when it found a disputed fact about the conduct underlying defendant's assault conviction that had not been established by virtue of the conviction itself.); *State v. Dickey*, 350 P3d 1054, 1065-1068 (Kan. 2015) (applying the "modified categorical" approach to enhanced sentencing under Kansas' burglary statute); see also *Dorsey v. United States,* 154 A3d 106, 122-126 (V) (D.C. 2017) (approving of trial court's comparison of foreign statute of conviction to D.C. equivalent based on elements alone); *State v. Guarnero*, 867 NW2d 400, 407 (D) (Wisc. 2015) (approving use of guilty plea to identify basis for defendant's prior conviction under federal statute of conviction where statute was divisible); *State v. Olsen,* 325 P3d 187, 189-193 (A)-(C) (Wash. 2014) (approving the state's method of comparing foreign statutes of conviction to state equivalents for sentencing purposes).

Elements are the constituent parts of a crime's legal definition — the things the prosecution must prove to sustain a conviction. At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant; and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty. Facts, by contrast, are mere real-world things — extraneous to the crime's legal requirements. We have sometimes called them "brute facts" when distinguishing them from elements. They are circumstances or events having no legal effect or consequence: In particular, they need neither be found by a jury nor admitted by a defendant.

(Citations and punctuation omitted.) *Mathis v. United States*, 579 U. S. ___ (136 SCt 2243, 2248 (I) (A), 195 LE2d 604) (2016).[12]

3. *The "formal categorical" and "modified categorical" approaches.* The application of the constitutional principles discussed above to a recidivist sentencing scheme should be, in most cases, fairly straightforward. For example, when applying them to

---

[12] The State argued that, when Nordahl pleaded guilty to the federal crime, he waived his Sixth Amendment objection to that conviction being used later to enhance his sentence under a recidivist statute. As should be apparent from the principles enunciated in *Descamps* and *Mathis*, Nordahl's jury trial waiver extends only to the elements of the crime for which he was sentenced, not to any underlying or "brute" facts that were not necessarily resolved by the entry of his plea. "[W]hen a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment." *Descamps,* 570 U. S. at 270 (III) (A).

OCGA § 17-10-7 (a) and (c), a Georgia sentencing court parses the *elements* of the prior out-of-state or federal crime and determines whether those *elements* satisfy the statutory definition of a felony under Georgia law. When the out-of-state or federal offense "sets out a single (or 'indivisible') set of elements to define a single crime[,]" the sentencing court "lines up that crime's elements alongside those of the [state] offense and sees if they match." *Mathis*, 136 SCt at 2248 (I) (A). This comparison of statutory elements is what the federal courts refer to as the "formal categorical" approach. See, e.g., *Taylor v. United States*, 495 U. S. 575, 600 (IV) (110 SCt 2143, 109 LE2d 607) (1990).

In *Taylor*, the United States Supreme Court required federal sentencing courts applying the ACCA to "look only to the statutory definitions," that is, to the elements of a defendant's prior offenses and not "to the particular facts underlying those convictions." Id. at 600 (IV). However, the Court nevertheless recognized a "narrow range of cases" in which sentencing courts would need to look beyond the statutory elements of the crime to "the charging paper and jury

instructions" used in a case. Id. at 602 (IV). Sentencing courts were allowed to resort to that approach, the Court noted, when confronted with a prior conviction for violating a statute that sets forth multiple crimes and is, thus, "divisible."[13] Id. This approach for evaluating the use of such convictions as predicate convictions came to be known as the "modified categorical" approach. See, e.g., *Descamps*, 570 U. S. at 260 (II).[14] "The categorical and modified categorical approaches are not mutually exclusive alternatives." *United States v. Titties*, 852 F3d 1257, 1265 (II) (B) (2) (10th Cir. 2017). Rather, the "modified categorical" approach is a tool that "helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Descamps*, 570 U. S. at

---

[13] A statute is divisible when it "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis*, 136 SCt at 2249 (I) (A). See also *United States v. Gardner*, 823 F3d 793, 802 (II) (B) (1) (4th Cir. 2016) ("A crime is not divisible simply because it may be accomplished through alternative means, but only when alternative elements create distinct crimes.").

[14] The categorical and modified categorical approaches are also used outside the ACCA context, such as in applying sentencing guidelines and immigration provisions. See, e.g., *United States v. Taylor*, 843 F3d 1215, 1221 (II) (C) (10th Cir. 2016) (sentencing guidelines); *Rangel-Perez v. Lynch*, 816 F3d 591, 595 (II) (A) (10th Cir. 2016) (immigration).

260 (II).

In *Shepard v. United States*, 544 U. S. 13 (125 SCt 1254, 161 LE2d 205) (2005), the Supreme Court applied the "modified categorical" approach to guilty pleas, explaining that a sentencing court could scrutinize a restricted set of materials to determine whether a prior conviction qualifies as a predicate conviction under the ACCA by showing that the defendant "necessarily admitted [the] elements" of the predicate conviction in entering his guilty plea. Id. at 26 (IV). In addition to the statute and the judgment of conviction, a sentencing court was allowed to review the charging instrument, the terms of a plea agreement, and the transcript of a colloquy between judge and defendant. Id. at 25-26 (III).[15]

4. *Applying this analysis to Nordahl's recidivist sentence.* In applying this analytical framework to the recidivist sentencing decision in this case, we first identify the federal crime used to

---

[15] For more on the evolution of the modified categorical approach, see generally Alexander G. Peerman, Note: "Parsing Prior Convictions: *Mathis v. United States* and the Means-Element Distinction," 118 Colum. L. Rev. 171 (2018).

enhance Nordahl's sentence under OCGA § 17-10-7 (a) and (c), consider whether the crime is divisible, and then parse the crime's elements using the "formal categorical" or "modified categorical" approach. For guidance in this process, we look to the relevant federal statutes and case law.[16] After establishing the elements of the federal predicate conviction, we determine whether those elements would describe a felony under Georgia law.

The record shows that Nordahl pleaded guilty to the crime of conspiracy, 18 USC § 371,[17] in that he conspired to commit an offense

---

[16] Because Nordahl pleaded guilty to his federal crime in the United States District Court for the Northern District of New York, we look to Second Circuit case law when there is a difference of opinion between the circuits on any point of law relevant to the analysis of the statutory elements. When a Georgia sentencing court determines the elements of an out-of-state criminal conviction, the law of the state jurisdiction where the conviction was obtained would govern. See, e.g., *Titties*, 852 F3d at 1270 (II) (C) (2) (applying Oklahoma case law and pattern jury instructions to determine whether an Oklahoma statute is divisible).

[17] 18 USC § 371 provides, in relevant part:
If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined [not more than $ 10,000] or imprisoned not more than five years, or both. If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not

against the United States, specifically, to violate 18 USC § 2314 as it pertains to the interstate transportation of stolen goods. Such a conspiracy is a Class D felony.[18] Both 18 USC § 371 and 18 USC § 2314 are divisible statutes;[19] therefore, we must review the statutes, the judgment of conviction, and the charging instrument to determine the elements of the crime to which Nordahl pleaded guilty. A review of those documents shows that Nordahl pleaded guilty to an indictment in which the government averred that he "knowingly and intentionally conspired to transport in interstate commerce goods, to wit: . . . silver of a value exceeding $5,000, knowing the same to have been stolen, in violation of" 18 USC § 2314 and that, in furtherance of that conspiracy, Nordahl "committed" 18

exceed the maximum punishment provided for such misdemeanor.

[18] A Class D felony is punishable by imprisonment of "not more than six years." 18 USC § 3581 (b) (4). After pleading guilty to violating 18 USC § 371, Nordahl was sentenced to serve a 60-month prison term.

[19] 18 USC § 371 "refers to two types of conspiracies: (1) conspiracy to commit a substantive offense proscribed by another [federal] statute. . . ; and (2) conspiracy to defraud the United States." *United States v. Alston*, 77 F3d 713, 718 (III) (3d Cir. 1996). 18 USC § 2314 is also divisible in that it sets out five distinct crimes. See *Omari v. Gonzales*, 419 F3d 303, 307-308 (II) (5th Cir. 2005).

overt acts of "possession of stolen goods," the cumulative value of which far exceeded $5,000. Having identified the averments of the indictment, we must still determine which of those averments are essential elements of the crime of conspiracy to which Nordahl pleaded (and *necessarily* admitted) when he entered his guilty plea.[20]

> A conspiracy conviction under [18 USC] § 371 requires proof of three essential elements: (1) an agreement among two or more persons, the object of which is an offense against the United States [or to defraud the United States]; (2) the defendant's knowing and willful joinder in that conspiracy; and (3) commission of an overt act in furtherance of the conspiracy by at least one of the alleged co-conspirators.

(Citations and footnote omitted.) *United States v. Svoboda*, 347 F3d 471, 476 (II) (A) (1) (2d Cir. 2003). That Nordahl pleaded guilty to conspiracy and not to the substantive offense of violating 18 USC § 2314 is significant. "It is elementary that a conspiracy may exist and

---

[20] See *Omari*, 419 F3d at 308 (II) n.10 ("Indictments often allege conjunctively elements that are disjunctive in the corresponding statute, and this does not require either that the government prove all of the statutorily disjunctive elements or that a defendant admit to all of them when pleading guilty."); see also *Malta-Espinoza v. Gonzales*, 478 F3d 1080, 1082 n.3 (9th Cir. 2007) ("[A] plea of guilty admits only the elements of the charge necessary for a conviction.").

be punished *whether or not the substantive crime ensues*, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself." (Emphasis supplied.) *Salinas v. United States*, 522 U. S. 52, 65 (III) (118 SCt 469, 139 LE2d 352) (1997). Although the *elements* of the substantive crime are not elements of a conspiracy under 18 USC § 371,[21] the government must prove that the *object* of the conspiracy was to defraud the United States or to violate a specific federal law. See *United States v. Mann*, 161 F3d 840, 847 (A) (1) (5th Cir. 1998) ("By its terms, § 371 provides that the unlawful objective of the conspiracy may be 'to commit any offense against the United States,' i.e.[,] to commit a federal crime, or 'to defraud the United States.'"). See also *Iannelli v. United States*, 420 U. S. 770, 777 (III) (A) (95 SCt 1284, 43 LE2d 616) (1975) ("Conspiracy is an inchoate offense, the essence of which is an

---

[21] The government is not required to prove that the defendant actually committed the substantive crime that was set forth in the indictment as the object of the conspiracy. See *United States v. Sarro*, 742 F2d 1286, 1293 (B) (11th Cir. 1984) ("A conspiracy and the related substantive offense which is the object of the conspiracy are separate and distinct crimes. Moreover, an illegal conspiracy is complete regardless of whether the crime agreed upon is actually consummated." (citations omitted)).

agreement to commit an unlawful act." (citations omitted)). Further, although the existence of an overt act is an essential element of the crime of conspiracy pursuant to 18 USC § 371 and must be proven beyond a reasonable doubt, the government is not required to prove the overt act specified in the indictment.[22] Therefore, by pleading guilty to the federal conspiracy charge, Nordahl admitted that he entered into an agreement to violate 18 USC § 2314; however, he did not admit that he committed that substantive offense.[23]

---

[22] See *United States v. Pascacio-Rodriguez*, 749 F3d 353, 360 (III) (A) (5th Cir. 2014) ("The general federal conspiracy provision, which applies to conspiracy 'to commit any offense against the United States, or to defraud the United States . . . in any manner or for any purpose,' requires an overt act." (citation omitted)); *United States v. Hooks*, 848 F2d 785, 791-792 (II) (B) (7th Cir. 1988) (overt act must be proven beyond a reasonable doubt). See also *United States v. Kaplan*, 490 F3d 110, 129 (II) (C) (2d Cir. 2007) ("[W]e have routinely found that no prejudice results from a variance between overt acts charged in the indictment and those proved at trial." (citations omitted)). Where the applicable conspiracy statute contains an overt act requirement, the purpose of that element is to require the Government to demonstrate that the conspiracy was actually "at work." *Carlson v. United States*, 187 F2d 366, 370 (10th Cir. 1951).

[23] See *United States v. LaBudda*, 882 F2d 244, 248 (II) (A) (7th Cir. 1989) ("It is the intent of the defendants to violate the law which matters, not whether their conduct would actually violate the underlying substantive statute."). See also *United States v. Ternus*, 598 F3d 1251, 1255 (III) (11th Cir. 2010) (When a defendant is charged with conspiring to transport stolen goods in foreign commerce, the government is not required to prove that the stolen goods were actually transported in foreign commerce.).

Consequently, the substantive offense may not be used in support of an enhanced sentence under OCGA § 17-10-7 (a) or (c). See *Descamps*, 570 U. S. at 270 (III) (A).

Having parsed Nordahl's federal conviction using the "modified categorical" approach, we conclude that the elements of the federal offense to which he pleaded guilty are: (1) knowingly and wilfully conspiring with another (2) to violate federal law (18 USC § 2314, by knowingly transporting in interstate commerce stolen goods of a value exceeding $5,000, a felony) and (3) committing an overt act in furtherance of the conspiracy. The second step in the analysis is to see whether the elements of this predicate conviction match those of a Georgia felony offense.

By focusing on the *conduct* underlying Nordahl's federal conviction, the Court of Appeals erroneously determined that Nordahl "admit[ted] that he stole more than $5,000 worth of silver from various homes, which he burglarized, and that he transported that stolen property across state lines." *Nordahl*, 344 Ga. App. at 694 (2). Consequently, the Court of Appeals held that "the State met

its statutory burden of proving that Nordahl was convicted of conduct which would be considered felonious under the laws of this state" because that conduct violated Georgia's theft by receiving stolen property statute, OCGA § 16-8-7 (a). Id. at 695 (2). That Code section provides:

> A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. "Receiving" means acquiring possession or control or lending on the security of the property.

Id. The offense is a felony when the value of the property involved exceeds a threshold amount.[24] The elements of Nordahl's federal conviction, however, do not match any of the elements of this Georgia theft offense because, in pleading guilty to the federal conspiracy offense, Nordahl did not admit to having received, possessed, disposed of, or retained stolen goods. Although we

---

[24] See OCGA § 16-8-12 (a) (1). In 2000, when Nordahl pleaded guilty to the federal conspiracy count, the threshold amount for the imposition of a felony sentence for violating OCGA § 16-8-7 (a) was $500. See former OCGA § 16-8-12 (a) (1) (2000).

conclude that the Court of Appeals erred in this respect, we nevertheless affirm the sentencing decision under the right-for-any-reason doctrine because the elements of Nordahl's federal conspiracy conviction match those of felony conspiracy to commit a crime under Georgia law as defined in OCGA § 16-4-8. That Code section provides, in relevant part:

> A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy. A person convicted of the offense of criminal conspiracy to commit a felony shall be punished by imprisonment for not less than one year nor more than one-half the maximum period of time for which he could have been sentenced if he had been convicted of the crime conspired to have been committed, by one-half the maximum fine to which he could have been subjected if he had been convicted of such crime, or both . . .

Id.

A side-by-side comparison of the elements of Nordahl's federal conviction and the elements of Georgia's conspiracy statute shows that the elements match. Nordahl admitted that he conspired with

another to commit a felony offense[25] and that he committed an overt act in furtherance of the object of the conspiracy. Further, the substantive offense forming the object of the federal conspiracy to which Nordahl pleaded guilty proscribes acts which, if committed within Georgia, would also constitute a felony in Georgia.[26] The object of Nordahl's felony conspiracy conviction (knowingly transporting in interstate commerce stolen goods of a value exceeding $5,000) would include, as a matter of law, the crime of felony theft by receiving under Georgia law (by knowingly

---

[25] That Nordahl pleaded guilty to conspiring to violate a federal criminal law (as opposed to a Georgia criminal law) is immaterial to the application of the "modified categorical" approach. Any out-of-state or federal conviction offered for use as a predicate conviction under OCGA § 17-10-7 (a) and (c) would necessarily define a crime punishable in that jurisdiction, given that the federal government and the states are separate sovereigns. See, e.g. *Heath v. Alabama*, 474 U. S. 82, 89 (II) (106 SCt 433, 88 LE2d 387) (1985) ("Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other." (citation and punctuation omitted)).

[26] Like its federal counterpart, Georgia's general conspiracy statute "can only be defined in conjunction with a second criminal Code section, i.e., the substantive crime involved in the conspiracy[.]" *Orkin v. State*, 236 Ga. 176, 178 (1) (223 SE2d 61) (1976). See also *Hourin v. State*, 301 Ga. 835, 839 (2) (a) (804 SE2d 388) (2017) ("Obviously, conspiring to commit an act that is not a crime is not criminalized by our conspiracy statute[.]" (citation omitted)).

possessing and controlling stolen goods of a value exceeding $500).[27]

For these reasons, Nordahl's federal conspiracy conviction qualified as a predicate conviction under OCGA § 17-10-7 (a) and (c); therefore, the trial court did not err in sentencing Nordahl pursuant to the general recidivist statute.

Judgment affirmed. All the Justices concur.

Decided June 3, 2019.

Certiorari to the Court of Appeals of Georgia — 344 Ga. App. 686.

Bruce S. Harvey, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Marc A. Mallon, Assistant District Attorneys, for appellee.

---

[27] Under OCGA § 16-1-6 (1), a lesser crime is "included in" the greater where "[i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of [the other crime]." In determining whether one crime is included in the other, we apply the "required evidence" test adopted in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006).